The CJA appointment? Yes, sir. Thank you. Honorable judges, first thing I'd like to say is that in our brief, the original brief and the appellant's supplemental brief, we had addressed the last two points, which were ineffective assistance of counsel and jurisdiction not vested in the United States District Court in general, nor venue in the Western District of Missouri. Those were for the benefit of the appellant. And as the court will know, he did file his pro se brief. Mr. Bell has opinions on law that are outside of the mainstream. And I hope I didn't offend the court by doing so, but I did want to fully clear that record, if you will. We understand. Your Honor, we are here, in my opinion, we are here on essentially one issue. Judge Whipple, an excellent man who has served the judiciary for many years, tried cases in front of him. He's a fun man to try cases before, does a great job. Unfortunately, in this particular case, he imposed a condition of supervised release that the appellant, the defendant at that time, the appellant herein, not consume alcohol and not frequent establishments where alcohol was the primary piece of business. The appellant's history, Your Honor, is yes, he used marijuana. He lived in California. He used medicinal marijuana. This is a drug trafficking case, marijuana case. As the court's very well aware, most of our drug cases, we have defendants that are drug addicts. They use drugs. However, in this particular case, Mr. Bell was a, shall we say, a businessman. In fact, he had legitimate businesses. He did a lot of work with the city of Oakland and with the county, Alameda County. And in order to supplement his business, he seized on at that time, about 10 more years ago, the lucrative, let's send medicinal marijuana to Missouri and to other places. It was a business opportunity. It wasn't a drug issue. Judge Whipple looks at this young man, younger than me, Your Honor. But given his marijuana use, it was reasonable for the district court to consider that as a potential addiction problem? I do not disagree. And I guess I kind of led that. Let me follow up, because don't we also have cases that express concern about cross-addiction type situations, and wouldn't that perhaps make this appropriate? Absolutely, Your Honor. I do not disagree with that at all. And the reason, that's kind of the reason why I led in with that it was a business opportunity. This was not a man who was addicted, shall we say, to marijuana. He did use it the same as I would use a glass of good Cabernet at the end of an interesting day preparing an appellate brief, Your Honor. We need to relax. So he did use marijuana. He used it recreationally. And he did not use it to the extent that he abused it. I'm not disagreeing with the concept. And Judge Whipple's very eloquent colloquialisms on the first bottle of booze, and then the second, and the third, you're in trouble. I mean, we've all heard it many times. And there is a lot of truth to that. I mean, Judge Whipple's down there in Lebanon, down southwest Missouri, and he, as a circuit judge, as a district, as a circuit judge in state, dealing with those issues. And certainly, as he saw from the bench here, as we've outlined, those are problems. In this particular case, the judge even pointed out on the record, Mr. Bell, I know, I understand that this is not your problem. That's not an issue. However, in order to keep you, to help you out, I'm giving you this admonition or this term of supervised release. Your Honor, the law, I think, is very clear that the court cannot impose a sentence that is not supported by the 18 U.S.C. 3553 factors. There's no support, there's no support for telling Mr. Bell he cannot use alcohol, he cannot go to an establishment that serves alcohol. You make a great, good point, Judge, that yes, and it's common sense tells us that if we have an addiction and we're using something that is addictive, the whole deal of addiction means that we use it to excess. And we use alcohol, marijuana. I'm 70 and, you know, unfortunately I was raised Catholic with strict parents, parental supervision as a kid. So we didn't experiment with it back then. And as we get older, you know, it's just kind of not worth the effort. But alcohol, you know, a good scotch, a little wine, you know, it's relaxing, it's legal. However, a bottle or two bottles of wine in the evening, making a significant dent in that bottle of Valvaini is not good. And it does lead us to lose our And, you know, the old classic joke about, you know, did I really wear the lamp shade on my head last night? That's the problem that Judge Whipple was trying to address. I acknowledge that, judges. However, I believe in this particular case, this, I think this could be called a one-off case, shall we say. Judge Whipple, on the record, I believe, destroyed the factual basis for imposing that condition, Judge. And as a result, I think we get down to the next issue, which is... Counsel, just one moment on that. Doesn't the PSR that the district court had refer to as substance abuse history? Yes, Your Honor. And that PSR did, and it did point out, I think, that he was using with the man. And I believe that he was truthful when he spoke with the PSR writer that he used it. I do believe that the PSR writer made a very logical assumption that here in Missouri, if you're using marijuana, that's a problem. Marijuana is illegal today for recreational use, in spite of our brand new constitutional amendment. And it was certainly, beyond a shadow of a doubt, illegal when the probation officer interviewed him and made the PSR, Your Honor. The government has argued in their brief that this is included in the appeal waiver. Do you want to address that before your time winds down? That's what I want to go to next, Your Honor. Yes. Your Honor, I believe that the appeal waiver is designed. I want to go kind of into why is it there. It's designed to assist the government and the appellate court and defense counsel from the issue of filing Anders, what ultimately become Anders briefs, frivolous appeals. I think it is there so that defendants are not motivated to have to request the court to review every single sentence because of sentencing guideline variances or issues or things like that. I believe, Your Honor, and it's very clear right in the waiver that the waiver does not apply to an illegal sentence. And here's the problem I see with this case from the other side and from the court side. How do you say, okay, we're going to review this and say that this imposition of a supervised release factor is illegal and constitutes a waiver, the appellate waiver, without opening the door to a veritable flood of appellants arguing that their sentence, their condition of supervised release is also illegal? In this particular case, I would suggest to the court that it can be carved out by simply pointing out on the record that Judge Whipple said this defendant, this is not an issue with you, Mr. Bell, but I'm imposing this condition for your future safety. I can't remember exactly what he said. It's in the brief. Because of that, I think, Your Honor, you can create an opinion. You can sustain the appellant's appeal, remand the case to remove that provision of his supervised release without opening the door to a floodgate, because in this particular case, we have on the record a finding by the district court that the defendant, that this provision was not supported by the district court and that this was good policy. Mr. Johnson, your time is about to expire. Do you want to reserve some? I'm sorry? Would you like to reserve the remainder? Yes, Your Honor. Thanks. Thank you. Good morning, Mr. Casey. Good morning, Mr. Police Corp. Brian Casey, appearing on behalf of the United States in this matter. I'd like to begin with, I mean, this is sort of a kind of a two-issue appeal in the sense that we begin with the appeal waiver issue and then we go to whether or not the district court abused discretion in imposing the condition. And I'd like to begin with the appeal waiver issue because I think it's dispositive of this appeal. In order to have a valid waiver of an appellate right or an appellate issue, that waiver under this court's law needs to be part of a knowing and voluntary appeal waiver. The issue needs to be within the scope of that waiver and enforcing the waiver does not create a miscarriage of justice. So, how about within the scope? My understanding is the appeal waiver said that he can appeal a sentence other than one set out in the binding plea agreement, right? That's correct, Your Honor. So there was no binding plea agreement about this special condition of supervised release, was there? There wasn't. And so that language... So doesn't that put it outside the scope? No, no. I think the other than language, it's clear within the plea agreement what that means is the two terms that were agreed to as part of the binding plea agreement. That was that it would be a 15-month sentence and that there would be three years of supervised release imposed. And that other than term shows up in several different parts of the plea agreement. And each time it's clearly referring to the sentence, those two binding terms. And so it's a sentence that would... A sentence that would fall under that clause would be a sentence that was something different than 15 months or different than three years of supervised release. That's what the other than means, different than those two agreed upon terms as part of this binding plea agreement. Counsel, doesn't that create an ambiguity? And if so, why shouldn't that be construed against the government? Well, it doesn't create an ambiguity, Your Honor. I think it's really quite clear reading the document in context of say paragraph six, paragraph 10, paragraph nine, that is very clear what other than means. It's other than 15 months, other than three years. But also why not construe against the government? The plea agreement itself has a interpretation paragraph that says this plea agreement is not to be construed against either party. Right. And I wanted to ask you about that. It seems to me that raises an interesting separation of powers problem. Can the government tell the court how to interpret what's normally a rule of construction for the court to apply? Well, I think it's a common contract term, Your Honor, that contracts have rules about how they're construed. And I think this one is, it says it's just under general contract principles. This is the principle of construction. I don't really see any separation of power issue that the government's one of the parties. It's not the government telling the court how to construe the contract. And it also says are not to be automatically construed. So that sort of leaves an out for a construction after careful consideration, construction against the government? I think there is, you know, room for the court to do that. But I don't think that in this case it rises to that level because it's very quite clear, it's very clear what the term means. I mean, the term is saying if it's a sentence different than 15 months or three years of supervised release, that you can appeal. Anything else would fall under the And I think, you know, that's also made clear in the sense that this waiver explicitly covers this issue. The waiver says you have waived your right to appeal just in abuse of discretion. And this is an abuse of discretion issue. So it's very clear that this is covered in that appellate waiver. It's not, this term of supervised release is not an illegal sentence. Is that waiver understands it? Is that waiver, it understands, in this case, of course, case law understanding an illegal sentence to be a sentence that's sort of outside of the legal authority of the court, outside the statutory authority of the court, such as a sentence imposed for a term of years longer than the statute allows. This term of, this condition is a legal condition. This court in several cases has affirmed this condition of supervised release. So it's not the case that it is a term that's outside the court's power. The plea agreement doesn't specifically mention conditions of supervised release, does it? It talks about that there will be conditions imposed. It talks that there will be a term of supervised release. But in terms of the waiver, it doesn't talk about it. It does not. That's correct, Your Honor. So you want to lump supervised release conditions into the term sentence. That's correct. Do we have cases that decide that one way or the other that say that that makes it, sentence makes it clear that that includes supervised release conditions or not? Similar appellate waivers, I don't think the court has ever looked at that in that just very precise term. But similar appellate waivers have been found to apply to terms of conditions of supervised release. You know, this court's case in Andes, which really is sort of the lead en banc case, on appellate waivers actually did involve terms of supervised release. And I don't believe the waiver considered in that case specifically says, it just says a sentence. And it's very clear from the change of plea colloquy and from the plea agreement that a term of supervised release would be part of the defendant's sentence. I believe also Andes, and I believe, and I'm not sure which one has, which ones list out the appeal waivers and which ones don't, but I believe also the Billyott case does the same. With your time quickly expiring, maybe you might address the merits just in case you don't win on that issue. Absolutely, Your Honor. This was, imposing this condition was not an abuse of discretion. There was more than ample facts in the record for the district court to see this as a substance abuse issue and under conditions, under facts very similar to ones where this court has affirmed that condition of release. Based on what the district court said, why isn't this more of just an application of a term of supervised release in a categorical sense rather than an individualized assessment of whether it's an appropriate term or condition for this individual person? I think that's a good question. I think understanding the district court's comments requires sort of looking at them in context. This term of supervised release was listed in the defendant's PSR. It was not, there were no objections to the PSR. When they got to sentencing, it was reaffirmed. Parties did not have objections to the PSR and no objections were made during the sentencing. The district court granted allocution, he heard arguments of the parties and imposed his sentence. And it was only after all of that was done that Mr. Johnson then makes an objection to this term of supervised release. So it wasn't as if this term was teed up for the parties. It's not like the parties had briefed it or argued it specifically to the court. Rather the court is catching at the end of a sentencing hearing an objection and made his comments in that context. So I think particularly in that context, this is a situation where this court can do what it has done in other cases and go to the wider record and see are there facts that support it. Because I think it would be where the issue had not been discussed and teed up. So what facts support an alcohol ban? Well I think it goes directly to your question earlier, your honor, about the cross addiction. And so cases such as the Simon case, the Forday case, the Roberts case, the Mosley case are all ones where this court has said that the court can apply sort of judicial common sense and say if someone has a substance issue, then we can also see where banning alcohol would be a condition that meets the goals of 3583 and particularly... Mr. Johnson says though that he doesn't have an abuse issue, just that he was a recreational user. Well I think the facts there that look like daily use, I think regular use, a court can see that as a substance abuse problem. So the PSR says daily use? I believe he self-reported regular use and for some long-term, he attributed it to some long-term health problems. And I think the court could easily read this as being a habitual or daily use situation. Does it matter that it was a medical use? I don't know that there's any objection to the assertion that it was medical use in the state of California. Is that a factor that the district court should consider, that that's different than illicit use in another state where you cannot get it for that purpose? Not in this case, Your Honor, because the defendant said that he had a prescription but he wasn't able to provide it. And this is also a defendant where there are significant reasons to find him untrustworthy. I mean, this is a defendant that at the time of his arrest fled, he was on the lam for five years when he was found, he was back growing marijuana again. Well, did the government object to that portion of the pre-sentence report that said it was for medical use? The portion of the pre-sentence report says that he reported it was for medical use but was not able to provide a prescription. So would the government have to, if the government didn't object to that, would that be then taken as true for the purposes of the district court that it was medical use unverified? But I think medical use unverified is enough for the district court to have some suspicion or attribute that this was some illicit use. Very well, thank you, Mr. Casey. Mr. Johnson, we'll give you a minute. Thank you, Judge. One thing I would like to point out, this defendant was not on the lam. The U.S. Marshals put a card in the door of his house in Oakland and said, give us a call. He called his attorney and he decided maybe he didn't choose to return that call. He moved in with his girlfriend and he remained in active business in Oakland. He was dealing with the county and with the city on his business contracts, was in daily contact with government officials and his attorney did contact the Western District of Missouri to try and work out some self-surrender. The Western District of Missouri U.S. Attorney's Office chose not to respond to that request. Effectively, he was on the lam, but it wasn't that he was out hiding and trying to avoid arrest. Your Honor, the two things I'd like to point out, again, yes, the paragraph 59 of the pre-sentence report does talk about that he began using marijuana regularly after being legally prescribed the substance for medical use in the state of California and he used it until the time of his arrest. And I would point out, Your Honor, on page 15, lines 13 through 15 of the transcript, Judge Whipple did say, in talking about imposing these conditions, supervised release, he said, now there's no, he said, you know, I put that in there as a precaution. And then he says as to the, I'm sorry, the curfew. He said, they're out on the prowl and they get into trouble, they get drinking and that causes problems. And then he said, now there's no indication you do that. But I'm going to leave it on there because I'm not even going to give you the chance to be tempted by it, all right? And then later he says, now, Mr. Bell, this will probably come back to haunt me. And then he talks about me in South Missouri and his eloquent language. We'll see if that happens or not. Thank you, Mr. Johnson. I see your time's expired. Thank you, Judge. Counsel, we appreciate both of your arguments. The case is submitted and will be decided in due course.